IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:15-HC-02187-D

**Michael Ray Williams**,

     Petitioner,

v.

**Carlton Joyner**,

     Respondent.

**Order &
Memorandum & Recommendation**

  Prison officials alleged that over a six month period, Plaintiff Michael Ray Williams engaged in misconduct and disobeyed their orders in a variety of ways. A Disciplinary Hearing Officer ("DHO") convicted Williams on each of the nine charges after holding an evidentiary hearing. Williams now challenges his disciplinary convictions under 28 U.S.C. § 2241, arguing that the officials violated his constitutional rights during the hearings. Am. Pet., D.E. 7.

  Respondent Carlton Joyner moved for Summary Judgment, arguing that the officials followed all constitutional requirements. D.E. 23. He also moved for leave to file excess pages. Williams filed a timely response. D.E. 32.[1] The district court then referred this matter to the undersigned for resolution. For the following reasons, the undersigned allows Joyner's Motion for Leave to File Excess Pages and recommends that the district court grant his Motion for Summary Judgment.

---

[1] Williams received an extension of time to respond on April 5, 2017. D.E. 30. In the order granting the extension, the court directed Joyner to respond to Williams's allegation that the prison officials were interfering with his attempts to file legal materials. The affidavits and exhibits Joyner filed in response to this directive, D.E. 31, along with the materials that Williams provided to the court, show that the prison officials have not denied Williams access to the court.

**I.      Statement of the Facts**

Williams is in the custody of the State of North Carolina at Central Prison. From March to September 2015, Williams allegedly disobeyed prison rules and orders in various ways. In March 2015, Williams watched a pornographic video on the meal swipe computer in the Dining Hall. Resp't Ex. 1 at 8. His viewing of this video was confirmed by video footage of the area and a review of the browser history of the computer. *Id.*

Two months later, Unit Manager Ricky Bell observed Williams standing in front of his cell window with just his boxers on. Resp't Ex. 4 at 5, D.E. 20–4. Bell ordered Williams to put his pants on if he wanted to stand in the viewing area inside his cell. *Id.* Williams refused. *Id.*

A month later, Williams became agitated by how Processing Assistant Julia Michael Tucker was performing her notary services and hurled various profanities at her. Resp't Ex. 5 at 6, D.E. 20–5. Tucker then refused to provide any further notary services to Williams. *Id.* In response, Williams responded by doubling down on his earlier approach to expressing his displeasure and shouted additional profanities and insults at her. *Id.*

Finally, from April to September, Williams masturbated in the presence of prison officers despite their orders for him to stop. Resp't Ex. 2 at 8, D.E. 20–2; Resp't Ex. 3 at 8, D.E. 20–3. Resp't Ex. 6 at 7, D.E. 20–6; Resp't Ex. 7 at 6, D.E. 20–7; Resp't Ex. 8 at 6, D.E. 20–8; Resp't Ex. 9 at 4, D.E. 20–9.

These incidents led to him receiving the following charges:

1. Possession or use of an unauthorized recording, image taking, or communication device that has direct outside communication capability;

2. Willfully disobeying a lawful order of a prison official or employee;

3. Directing or using disrespectful, profane, lewd, or defamatory language toward or in the presence of any State official, member of the prison staff, inmate, or member of the general public; and

4. Six convictions for committing a sexual act, indecently exposing oneself, or touching the intimate parts of oneself for the purpose of sexual gratification.

Resp't Ex. 1–9. For each of the charges, prisoner officials gave Williams a written notice of the charge and an explanation of both his disciplinary and appeal rights. *See* Resp't Ex. 1–9.

A DHO held a separate hearing on each of the alleged violations. *See* Resp't Ex. 1–9. At each hearing, the DHO gave Williams an opportunity to enter a plea for each of his convictions; Williams pled not guilty for the first four convictions but refused to enter any plea for the remainder. *See* Resp't Ex. 1–9. Prison officials supported each charge with oral or written statements by the reporting officer, as well as a mix of other evidence including statements from other officers, written reports, videos, and even William's own written statements. *See* Resp't Ex. 1–9. The DHO allowed Williams the opportunity to request staff assistance and to present evidence, including oral and written statements from himself and others. *See* Resp't Ex. 1–9. Williams took advantage of these opportunities for some, but not all, of his charges. *See* Resp't Ex. 1–9. He also had the opportunity to attend each hearing, but he chose to stay for only a few of them. *See* Resp't Ex. 2, 5–9.

After reviewing the evidence in each hearing, the DHO found Williams guilty in a written decision and provided him with an appeal form. *See* Resp't Ex. 1–9. As a result of his disciplinary conviction in eight of the charges, Williams lost anywhere from 20–50 days of sentence reduction credits for each violation. Resp't Ex. 10 at 2, D.E. 20–11; 2–7, 9. Williams did not lose any credits for the eighth charge. Resp't Ex. 8 at 4.

Williams could appeal each of his convictions to the Prisons Director. Resp't Ex. 1–9; Resp't Ex. 11 at 4–7, D.E. 20–11. He did so for most of his charges, but the Director affirmed each of his convictions. Resp't Ex. 1–4, 6–8. Williams failed to exhaust his state court remedies for any of the convictions before filing this Petition. Pet. at 3, D.E. 1.

## II.  Discussion

### A.  Standard of Review

Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson* v. *Liberty Lobby. Inc.*, 477 U.S. 242, 247–48 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, *Anderson*, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis removed) (quotation omitted). In making these determinations, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. *Scott* v. *Harris*, 550 U.S. 372, 378 (2007).

### B.  Analysis

As an initial matter, the court notes that Williams failed to exhaust his North Carolina State court remedies before bringing this action. Pet. at 3, D.E. 1. The court, however, finds it appropriate to proceed to the merits of his claims. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust remedies available in the courts of the State.").

Williams contends that his disciplinary convictions violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Specifically, he asserts that he "had rights entitled to him under the 5th [and] 14th Amendments of the United States Constitution; and those rights were abrogated by the [DHO]" in all nine of his disciplinary convictions. Pet. at 7, D.E. 1.

The Due Process Clause entitles an inmate to several procedural safeguards before prison officials may discipline him by taking away earned good-time credit. *Wolff* v. *McDonnell*, 418 U.S. 539, 557 (1974). These limited due process rights include advanced written notice of the charges, written findings, and a limited right to call witnesses. *See id.* at 563–64. And the findings of a prison disciplinary board must be supported by some evidence in the record, *Walpole* v. *Hill*, 472 U.S. 445, 454–55 (1985), and be made by an impartial adjudicator, *Wolff*, 418 U.S. at 570–71.

As an initial matter, the court notes that an inmate is entitled to these procedural protections only when the conviction results in the loss of statutory good-time credits or where some other liberty or property interest is at issue. *Id.* at 556–58. Thus when "success in the action would not necessarily spell immediate or speedier release" from imprisonment, a prisoner may not pursue his claims in a habeas corpus proceeding. *Wilkinson* v. *Dotson*, 544 U.S. 74, 81 (2005) (emphasis in original). Instead, a civil rights action under 42 U.S.C. § 1983 provides the "appropriate remedy." *See id.; see also, Hammer* v. *Pearson*, No. 7:14-cv-00313, 2015 WL 467536, at *1 (W.D. Va. Feb. 3, 2015) ("Petitioner's sentence was not impacted by sentence of segregation. Thus, petitioner's claim relating to the October 5, 2015 conviction does not lie within 'the core of habeas corpus' and may be brought, if at all, via 42 U.S.C. § 1983." (quoting *Wilkinson*, 544 U.S. at 82). Because the DHO did not reduce William's sentence reduction credits for the eighth charge, he cannot pursue his claim for that charge.

5

For the remainder of Williams's claims, the court finds that they fail on the merits. The crux of Williams's claims is that the DHO failed to comply with North Carolina Department of Public Safety ("DPS") polices in his numerous cases. *See, e.g.*, Pet'r Ex. at 6–12 D.E. 1–1; Am. Compl. at 5, D.E. 7; Pet'r Resp. at 11–17. But the unrefuted evidence on record indicates that each DHO complied with DPS policy. *See*, *e.g.*, Resp't Ex. 10, D.E. 20–10.

Regardless, the DHO's failure to follow DPS policy does not, on its own, constitute a constitutional violation. *See Riccio* v. *Cty. of Fairfax*, Va., 907 F.2d 1459, 1469 (4th Cir. 1990) ("If state law grants more procedural rights than the Constitution would otherwise require, a state's failure to abide by that law is not a federal due process issue."); *Paylor* v. *Lewis*, No. 5:12-CT-3103-FL, 2016 WL 1092612, at *14 (E.D.N.C. Mar. 21, 2016). On the contrary, decisions by a disciplinary board to revoke good-time credits pass scrutiny under the Due Process Clause if there is some evidence in the record to support the conclusions. *Walpole*, 472 U.S. at 454. Federal courts will not review the accuracy of the disciplinary hearing officer's fact finding either de novo or for clear error. *See Baker* v. *Lyles*, 904 F.2d 925, 932 (4th Cir. 1990). Rather, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the [disciplinary hearing officer]." *Id.* (quotation omitted).

The court finds that the evidence summarized above satisfies the "some evidence" standard; thus William's convictions did not violate the Due Process Clause. *See, e.g.*, *Walpole*, 472 U.S. at 454–56; *Baker*, 904 F.2d at 932. As for the remaining *Wolff* requirements, in each of his nine disciplinary convictions, Williams received advance written notice of the disciplinary charges and he received a written statement from the DHO of the evidence relied on and the reasons for the disciplinary action. *See Wolff*, 418 U.S. at 563–64. Likewise, Williams received an

opportunity to call witnesses. *Id.* Finally, Williams does not challenge and there is no evidence to indicate that the DHO was not an impartial adjudicator. *See id.* at 570–71.

For these reasons, the undersigned finds that Joyner met his burden of showing the absence of a genuine issue of material fact. The burden now shifts to Williams to present specific facts showing that there is a genuine issue for trial.

He first contends that the DHO's determination for his first charge is in error because he did not personally review the video but rather relied upon the reporting officer's written statement. Williams's speculation that the DHO would have reached a different conclusion had he personally reviewed the video does not create a material issue of fact, nor does it establish that he was denied due process. *See Griffith* v. *Stancil*, No. 5:10-HC-2048-D, 2011 WL 6130803, at *3 (E.D.N.C. Dec. 8, 2011) ("Griffith has not offered evidence which directly contradicts the DHO's findings. Instead, he offers merely his own speculation that had the DHO personally viewed the video footage, the DHO would not have found Griffith guilty. However, Griffith offers no reason to find that the investigating officer did not correctly report the contents of the video footage to the DHO, nor does he explain how the DHO's findings were unsupported by any evidence in the record").

He next contends that he was harmed by the DHO reliance on written reports rather than in-person testimony. But Williams has not established any harm from this reliance. *See, e.g.*, *Brown*, *Piggie* v. *Cotton*, 344 F.3d 674, 678 (7th Cir. 2003) (holding potential due process violation harmless where accused inmate could not explain how witness' live testimony would have helped him); *McGuinness* v. *Dubois*, 75 F.3d 794, 800 (1st Cir. 1996) (holding lack of live testimony harmless when inmate could present a defense, supported by witness affidavits); *Powell* v. *Coughlin*, 953 F.2d 744, 751 (2d Cir. 1991) (holding denial of inmate's witness request for her

psychiatrist harmless, in part, because the court admitted the psychiatrist's notes instead); *Yohe* v. *Owens*, No. 5:14-CT-3315-FL, 2016 WL 7263958, at *5 (E.D.N.C. Dec. 15, 2016).

Thus, after reviewing the facts in the light most favorable to Williams, the undersigned finds that Williams has failed to present specific facts showing that there is a genuine issue for trial.

### III. Conclusion

As a result, the undersigned recommends that the district court grant Joyner's Motion for Summary Judgment, D.E. 18, and dismiss Williams's Petition. The court also GRANTS Joyner's Motion for Leave to File Excess Pages. D.E. 21.

The court also directs that the Clerk of Court serve a copy of this Memorandum and Recommendation on petitioner. Petitioner shall have until 14 days after service of the Memorandum and Recommendation on petitioner to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a *de novo* determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If petitioner does not file written objections to the Memorandum and Recommendation by the foregoing deadline, petitioner will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without this review. In addition, petitioner's failure to**

**file written objections by the foregoing deadline will bar petitioner from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright* v. *Collins*, **766 F.2d 841, 846–47 (4th Cir. 1985).**

Dated: August 8, 2017

_____
Robert T. Numbers, II
United States Magistrate Judge